MARIO MERCADO E HIJOS, Plaintiff and Appellant, *v.* MINIMUM WAGE BOARD, SUBSTITUTED BY THE COMMISSIONER OF LABOR OF PUERTO RICO, Defendant and Appellee.

No. 10667.   Argued May 6, 1953.—Decided June 18, 1953.

*Pedro M. Porrata, Pedro E. Muñiz Ramos* and *Luis Torres,* for appellant.   *Joaquín Gallart Mendía* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In an action for a declaratory judgment filed by the agricultural civil partnership Mario Mercado e Hijos against the Minimum Wage Board, the plaintiff prayed the court to declare that Mandatory Decree No. 3, "Establishing minimum wages, maximum working hours and working conditions that shall prevail in the Sugar Industry of Puerto Rico," issued on February 27, 1943, does not cover grass cutters nor those laborers engaged in grubbing.

The Board filed its answer and thereafter the parties submitted the case to the lower court on a stipulation which substantially reads as follows:

"2. That this is an action for a *declaratory judgment* brought by the Agricultural Civil Partnership Mario Mercado e Hijos against the Minimum Wage Board of Puerto Rico, now substituted by the Commissioner of Labor, asking this Honorable Court to declare that Mandatory Decree No. 3 of the Minimum Wage Board, in force since April 27, 1943, and establishing the minimum wages, maximum working hours and

working conditions that shall prevail in the sugar industry of Puerto Rico, is not applicable in its agricultural phase to those laborers who work for the plaintiff in the tilling, felling, maintenance, cutting and clearing of the grass used by the plaintiff for grazing cattle which in turn it utilizes to haul carts and in other tasks connected with the sugar industry.

"3. That when this action for a *declaratory judgment* was filed, the plaintiff was paying and still pays to the laborers engaged in the aforesaid work in the grass fields wages lower than $1.50 for 8 hours of work, which is the minimum wage established by Mandatory Decree No. 3 for all kind of work *not classified* within the agricultural phase of the sugar industry, and on farms which are neither small nor inland farm.

"4. That it is defendant's position that the laborers engaged by plaintiff in the tilling, felling, maintenance, clearing and cutting of grass used for grazing cattle which in turn is utilized to haul carts and in other tasks connected with the sugar industry, are covered by Decree No. 3 of the Minimum Wage Board and that said laborers should be paid the wage provided therein for unclassified occupations in the agricultural phase.

"5. That the parties consider that the only questions for decision in this action for a declaratory judgment is whether or not the above mentioned laborers are covered by Decree No. 3 of the Minimum Wage Board of Puerto Rico, and they submit the case upon this stipulation praying the Court to grant both parties 15 days to submit memoranda in support of their respective contentions."

The lower court rendered judgment declaring "That the laborers who have been working and are still working for the plaintiff in the tilling, felling, maintenance, clearing and cutting of grass which the plaintiff has used and uses for grazing cattle which in turn it has utilized and utilizes to haul carts and in other tasks connected with the sugar industry are workmen whose occupations pertain to the agricultural phase of the sugar industry covered by Mandatory Decree No. 3 of the Minimum Wage Board of Puerto Rico and that since said occupations are of those not classified in Article A, § 1 of said Decree, these workmen are entitled

to receive the wage fixed by the Decree in the agricultural phase for occupations not classified."

On appeal plaintiff Mario Mercado e Hijos alleges that the trial court erred in entering such declaratory judgment.

Clause C, subdivision 3 of Mandatory Decree No. 3 defines the sugar industry as follows:

"3. Definition of the Industry: The Sugar Industry, to which this decree applies is defined as follows:

"The production of sugarcane in its agricultural and industrial phase, including, but not by way of limitation,

"(a) *Agricultural Phase:* Preparation of the soil, planting, cultivation, harvesting, transportation of the cane if performed by the farmers themselves, and any other operation of an agricultural nature; and

"(b) Industrial Phase: The transportation of the cane if performed by the sugar central, the weighing, the preparation and grinding of the cane, the elaboration, handling, packing, weighing and warehousing of sugar and any other operation related to the industrial phase of the manufacture of sugar which takes place after the cane is weighed in the scale of the central and before the sugar is removed from the warehouse of the central; *Provided,* that the transportation of sugar, if performed by the centrals themselves, shall be considered as part of the industrial phase."

As to the agricultural phase, which is the one involved in this case, the Decree provides as follows:

"A. Agricultural Phase:

1.—Minimum Wages: Every employer who employs workers in the agricultural phase of the Sugar Industry shall pay said workers, for the different occupations or types of work detailed below, at least, at the following wage rates for the first eight (8) hours of work in any twenty-four (24) hour period, with the exception of those who work as ditch-diggers, ditch-cleaners, ditch-loppers and cleaners who work with 'machetes,' and axmen cleaning ties in the water and irrigators in non-gravity irrigation systems when working in the water, to whom the minimum daily wage rate applicable shall be for

the first seven (7) hours of work during any twenty four (24) hours period:

| "Occupation | "Rates for other than small and interior farms | "Rates for small and interior farms |
|---|---|---|
| "(a) All kinds of work except as classified below........ | $1.50 | $1.40" |

Appellant contends that the foregoing provision does not cover laborers employed by it in the tilling, felling, maintenance, clearing and cutting of grass used for grazing cattle which in turn is utilized in hauling carts and in other tasks connected with the sugar industry.[1]

We do not agree. Without being limited thereto, the agricultural phase includes in addition to the plowing of the soil, the planting, tilling, harvesting and transportation of the cane when performed by farmers and any other operation of an agricultural nature. The appellant concedes that the work performed by the group of laborers mentioned in its complaint is of an agricultural nature. Its contention is to the effect that such duties do not fall within the agricultural phase of the sugar industry, because they have no connection with the planting and harvesting of the cane. However, appellant overlooks the fact that when the transportation of the cane is performed by farmers—and appellant does not deny that it is such a farmer—, such transportation falls within the agricultural phase of the sugar

---

[1] Appellant owns a sugar central and is engaged in the planting, cultivation and grinding of sugar cane. It is also engaged in other agricultural activities. Yet, in its complaint it is specifically alleged the following:

"5. That the plaintiff owns lands or farms and uncultivated soil which it fells and cuts, and thereafter devotes them for grazing cattle, which cattle is utilized to haul carts and in other tasks connected with the sugar industry.

"6. That there is a group of laborers engaged in the felling and cutting of grass which is used as above stated, who are paid an average of one dollar daily for eight hours of work."

Therefore, the controversy in this case is confined to the determination of whether that group of workmen is covered by Decree No. 3.

industry and that ever since its beginnings this industry has been utilizing ox-carts to transport cane.[2] The Decree itself acknowledges that fact when it establishes minimum wages and other working conditions to "cane-cart loaders" and to "cartmen in harvest work." If the appellant utilizes the cattle grazing in the farms where the laborers are engaged in the tilling, felling, etc., of grass to haul its carts, it can not be denied that the work of such laborers is incidental to the transportation of the cane, and that operation falls within the *agricultural phase* of the industry by express provision of the Decree. Regardless of the transportation of cane, the work of this group of laborers would always be incidental to the agricultural phase. The Decree does not intend to include in this phase of the industry solely those laborers engaged in "the preparation of the soil, planting, cultivation, harvesting and transportation of the cane if performed by farmers and any other operation of an agricultural nature," since other laborers whose duties are not the above mentioned and which on the contrary are of a different nature, have been expressly included in the agricultural phase. Among these laborers are the *carpenters, masons, mechanics, painters, electricians, other manual arts and trades skilled workers and their helpers.* Clause "A.—Agricultural Phase," subdivision 1(*f*) and (*g*) of the Decree. Indeed we find no essential difference, insofar as its connection with the agricultural phase of the sugar industry is concerned, between the carpenter who builds or repairs the carts and the laborer who tills the land where the cattle that hauls the carts graze. On the other hand, the defintion of "agricultural phase" includes, besides the preparation of the soil and the planting, cultivation, harvesting and transportation of cane *"any other operation of an agricultural nature."* (Italics ours.) This language is

---

[2] The appellant has admitted, at least, that it devotes the livestock fed on the lands where its laborers work in the tilling, felling, maintenance, cutting and clearing of grass, to haul carts and in other tasks connected with the sugar industry.

broad and comprehensive enough to embrace the group of laborers employed by appellant in the tilling, felling, maintenance, clearing and cutting of grass which it uses to feed the cattle which in turn is utilized to haul carts and in other tasks connected with the sugar industry.

The judgment appealed from will, therefore, be affirmed.

Mr. Justice Negrón Fernández, Mr. Justice Ortiz, and Mr. Justice Belaval did not participate herein.